**STATE of Missouri, Respondent,**

v.

**Odell BLACKMON (a/k/a Blackman).**

**No. 39922.**

Missouri Court of Appeals,
Eastern District,
Division One.

July 3, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1979.

Vincent S. Moody, Clayton, for appellant.

John D. Ashcroft, Atty. Gen., Paul R. Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for respondent.

SMITH, Judge.

Defendant appeals from his conviction by a jury of first degree murder, robbery, assault with intent to kill with malice, and armed criminal action. The court sentenced defendant to consecutive terms of life imprisonment, twenty years, thirty-five years and five years. On appeal defendant challenges only the conviction for murder.

The evidence at trial was largely circumstantial but would support a finding that defendant and Willie Cordell robbed the

Beneficial Finance Company on Grand Avenue in St. Louis with a gun and that during the course of the robbery defendant shot and wounded an off-duty policeman, Chris Day. The evidence also supports a finding that during the course of the robbery Willie Cordell was shot and that he died shortly thereafter from the wound.

Specifically, as to the death of Willie Cordell, the evidence most favorable to the State is as hereinafter set forth. After two masked men had entered the finance company they ordered several employees to a restroom area in the front of the office. Day was in the office to obtain assistance with his income tax. Cordell came to the area where Day and another employee were located and indicated a hold-up. Day observed that Cordell was not apparently armed, and Day rose to his feet and drew his pistol. Cordell then grabbed Day and the two men fell to the floor locked in combat. Cordell yelled at the other robber, who was armed, that Day had a gun and that the other robber should "shoot him." The other robber, identified through circumstantial evidence as defendant, came to the area of the struggle and from a standing position above the combatants fired two different series of "several" shots down toward Cordell and Day. Three bullets struck Day. One, removed surgically thereafter, was a .32 caliber. Day fired three shots—one at defendant, one at Cordell, and one into the floor. He did not know whether he hit Cordell. Day's gun was a .38 caliber. The combatants disengaged when defendant struck Day several times with a gun and Cordell and defendant fled with the proceeds of the robbery.

The robbers escaped by car to an area several blocks away. A police officer, searching for them on foot, located Cordell lying in a back yard bleeding from the chest. Cordell died from the chest wound. Near Cordell's wounded body was a .32 caliber casing and a spent bullet "less than .38 caliber". The medical evidence was that a bullet entered the right upper back of Cordell and exited through the right nipple. The trajectory through the body was neither ascending nor descending.

Defendant's testimony, and that of his witnesses, supported an alibi defense—that he was not present and did not participate in the robbery.

■ Defendant was charged with causing the death of Cordell during the perpetration of a robbery in violation of Sec. 559.007 RSMo 1975. The court's verdict directing instruction on the murder was MAI–CR 6.19 and required the jury to find that "defendant caused the death of Willie Cordell *by shooting him*" during the course of the robbery. It is defendant's contention that the emphasized portion of the instruction was unsupported by the evidence and it was therefore error to give the instruction.

On May 17, 1979 the Supreme Court held in *State v. Moore*, 580 S.W.2d 747 (Mo. banc 1979) that where a person is killed during the course of a felony the felony-murder rule is applicable whether the fatal shot is delivered by the defendant, a co-participant, a victim or a bystander, unless there has been an independent intervening act. In so doing the Court overruled *State v. Majors*, 237 S.W. 486 (Mo.1922) which had held that the felony-murder rule did not apply unless the fatal shot was delivered by the defendant or a co-participant. In view of *State v. Moore* the phrase "by shooting him" introduced into the instruction an additional element unnecessary to establish the guilt of defendant. Under *Moore*, it is immaterial whether Cordell was shot by defendant or by Day as long as he was killed in the course of the robbery under foreseeable circumstances.

Defendant has called our attention to the *Dayton* cases—*State v. Dayton*, 535 S.W.2d 469 (Mo.App.1976) and *State v. Dayton*, 535 S.W.2d 479 (Mo.App.1976)—to support his contention that even if the instruction contained an unnecessary element the instruction was still unsupported by the evidence as to that element and therefore prejudicially confusing. In the *Dayton* cases the defendants were charged as both principals and aiders and abettors of gross sodomitic conduct involving two boys. The evidence for the state clearly established the conduct,

the participation therein by four individuals including the defendants but there was no evidence as to which of the participants actually inserted his penis into one boy's mouth. The instructions on that crime included one on aiding and abetting but the verdict directing instruction required the jury to find that defendant, "either alone or acting in concert with others, inserted *his* penis into the mouth of G.D." In the first *Dayton* case the court held that such an instruction was not based upon substantial evidence, allowed conjecture and "corrupted" the submission requiring reversal. No specific finding of prejudice was made. In the second *Dayton* case (involving a brother of the first Dayton defendant) the court found also that prejudice existed because a question from the jury indicated confusion because of the inconsistency between the verdict director and the aiding and abetting instruction. While it is possible to distinguish the *Dayton* cases and the one at bar we are not convinced that the distinctions are meaningful to the principles necessary to resolution of the problem before us.

Defendant points to a question from the jury in this case as also indicating confusion.[1] We believe the question posed by the jury here related to transferred intent—i. e. if defendant shot at Day and hit Cordell was he guilty—rather than the question of which individual actually shot Cordell.

In contrast to the *Dayton* cases is *State v. Adams*, 339 Mo. 926, 98 S.W.2d 632 (1936), also involving felony-murder. There the killing occurred while the defendant and his compatriots were attempting to escape from a burglary. The trial court instructed the jury that defendant could be convicted of felony-murder if at the time of the killing the jury found that the defendant was still engaged in the asportation of the stolen property. In fact, the only evidence was that the defendant and his compatriots had abandoned the stolen property at the time of the escape. The court stated that asportation is not an element of burglary and does not therefore serve to prolong the crime. The court held, however, that asportation was not required as the escape was a part of the res gestae of the burglary and as such supported a conviction for felony-murder. The court then held that the instruction requiring a finding of asportation was erroneous but was not prejudicial because it added an unnecessary element and so was beneficial to defendant.

In neither the first *Dayton* nor the *Adams* cases is there any extensive discussion of why the inclusion of an additional but unnecessary element in the verdict director is prejudicial or non-prejudicial, other than a conclusion that it "corrupts" the submission in one case or is beneficial to defendant in the other. Second *Dayton* found prejudice in the confusion reflected in the jury's question, yet again made no analysis of why a defendant is prejudiced when a finding of guilt based upon all properly submitted elements would still be proper regardless of the evidence supporting an unnecessary element. Unless it may be presumed or inferred that the jury's affirmative finding of an unnecessary but unproved element *per se* demonstrates misconduct or confusion as to the other elements, we are unable to find prejudice in this situation. We are not willing to so presume or infer. Here all elements necessary to a jury finding of guilt of felony-murder were submitted to the jury which must have affirmatively found each such element. The additional submitted element was unnecessary to establish the crime and whether supported by evidence or not, could not have prejudiced defendant. If the instruction was erroneous it was not prejudicially so.

■ We also conclude there was evidence upon which the jury could have found that defendant shot Cordell. Several facts support this submission: (1) defendant fired several shots toward two men locked in combat; (2) not all of those shots struck Day; (3) the shot that killed Cordell entered his back and inferentially was not

---

1. "What is the definition of 1st degree murder? If a person is accidentally killed while someone is attempting to shoot another, does this mean that the 'killer' is guilty of 1st degree murder? Is premeditation necessarily involved?"

likely to have come from an individual with whom he was wrestling; (4) the path of the bullet was level which is consistent with a shot fired by a person standing above Cordell shooting down as defendant was; (5) a spent bullet, not from Day's gun, was found near the body of Cordell raising an inference that it was carried to that location in the clothing or body of Cordell and dropped out as Cordell was fleeing. The evidence was sufficient to support the instruction and the verdict rendered thereunder. *State v. Adams, supra* [1].

Judgment affirmed.

WEIER, C. J., and SNYDER, P. J., concur.