**Larry WARD, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 16557.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 8, 1990.

William J. Stewart, Bolivar, for movant-appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

SHRUM, Judge.

Movant Larry Ward appeals from an order denying, after an evidentiary hearing, his amended Rule 27.26[1] motion to set aside a judgment and sentence to life imprisonment for first degree murder. Initially, movant was charged with capital murder, but on September 23, 1983, pursuant to a plea bargain, the amended infor-

mation charging first degree murder was filed and movant entered a guilty plea to the amended information.[2] A pre-sentence mental examination was ordered. The examining physician concluded movant did not suffer from a mental disease or defect. He was sentenced December 15, 1983.

Movant's first point is that the trial court erred in denying his Rule 27.26 motion because he "could not enter a valid and knowing plea because he was advised with incorrect information." Specifically, he contends that he pled guilty because of statements made by his attorney about the felony murder charge, which statements movant claims were untrue. He claims the advice given him by his trial lawyer did not correctly state the required "mental state of the movant ... at time homicide was committed." He cites the following exchange between him and his lawyer at the time of defendant's guilty plea as evidence of such "incorrect information:"

MR. LYONS: And, Larry, do you understand—we've talked about this. Do you understand that even though if we went to jury trial, that the evidence might show Mr. Cooley was the one who actually committed the stabbing, that this would not be a defense to a felony murder charge?

MR. WARD: Yes.

MR. LYONS: And, you understand that the fact that you did help him conduct the kidnapping and the fact that he was murdered here in Taney County would make you just as guilty as he was?

MR. WARD: Yes.

Movant says he did not intend to harm anyone; and, in fact, had no idea that a homicide was contemplated until after it happened. Movant then relies on

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R. Rule 27.26 was repealed, effective January 1, 1988, by order of the Supreme Court of Missouri, and new rules were adopted in lieu thereof. On the instant appeal, post-conviction relief continues to be governed by the provisions of Rule 27.26, because the sentence was pronounced prior to January 1, 1988, and

movant's motion under Rule 27.26 was then pending. *See* Rule 24.035(1).

2. Information to which movant pled guilty charged violation of "Section 565.003, RSMo ... in that Rex ... was kidnapped as set out in ... Section 565.110 by the Defendant and during the course of that kidnapping Rex ... died as a result of a stab wound."

§ 562.041 [3] for the proposition that his trial counsel incorrectly advised him as to his responsibility for the conduct of another. In movant's brief, it is argued that movant "did not even know that a kidnapping was contemplated by the co-defendant until after the event." That claim is contradicted by substantial evidence.

Movant testified J.R. Cooley and Pam Foster came to movant's house and stayed about 30 minutes. Movant, Cooley and Foster then left to go to North Town Mall in Springfield to pick up Rex Smith (the victim) because Cooley wanted to try to persuade the victim to "plead the Fifth" at a "court hearing the next day." The court hearing involved charges pending against J.R. Cooley. Pam Foster and movant got the victim into the car by false pretenses. Pam called the victim and told him she wanted to go out with him, to celebrate her twenty-first birthday. Pam met the victim. The movant was supposed to find Pam and the victim and bring them to the car. In this manner, the victim was lured to the car by movant and Pam. The three of them got into the car; Cooley then entered the car, pulled a "toy starter pistol" and "showed" it to the victim. The victim was in the back seat of the car when Cooley got in and exhibited the starting pistol.

Movant then drove the car away from the mall. Movant drove to the Hilton Inn in Springfield where they changed drivers and Cooley began to drive. After 5 to 10 minutes, Pam was let out at her home. Movant remained in the automobile with the victim and Cooley until they ultimately drove to Taney County where the victim was killed. After Pam was let out of the car, Cooley, movant and the victim drove around some more in Springfield. Soon after Pam left the car, they stopped "in front of [the] Skate Corral" and the victim was "tied up" using extension cord to tie his hands in front. After the victim was tied up, Cooley drove out Kearney Street (Springfield) toward by-pass 65. As Cooley drove south on Highway 65 near the Battlefield exit, the victim asked to go back.

Cooley told him to shut up. Between Springfield and Ozark, Cooley and the victim were yelling at each other, with the victim telling him over and over that he wasn't going to testify. Cooley kept telling the victim he was lying.

The automobile was driven to Taney County and stopped at Swan Creek. Movant, J.R. Cooley and the victim got out of the car. Movant stayed by the car. By this time, movant described the victim as "scared." Rex told Cooley to leave him tied to a tree but Cooley said they were going down to talk. Movant did not see the stabbing. Movant did testify as follows: "Rex started howling. He got his skull cracked or something, ... and he started making these weird sounds, and I got in the car and backed it up, and J.R. was on the road, and I looked back to see where J.R. was at, and then I seen him come around. He hit Rex at the time in the chest area."

The switch blade knife used to stab the victim belonged to movant. Movant claimed Cooley had gotten the knife (without movant's knowledge) from the bottom drawer of movant's dresser at his house in Springfield.

The evidence, as summarized above, was elicited from movant at the time of hearing or was contained in his deposition taken June 15, 1988. Other evidence found in the transcript of movant's guilty plea is as follows:

THE COURT: Are you ready at this time to enter a plea?

MR. WARD: Yes.

THE COURT: What is that plea?

MR. WARD: Guilty.

At that point movant was sworn; he was asked if he entered the plea freely and voluntarily and movant answered, "Yes."

THE COURT: Because you feel that you are guilty of those charges?

MR. WARD: Yes.

\*    \*    \*    \*    \*    \*

3. Section 562.041 deals with accessorial liability and attempts to state the rules by which defendant can be held criminally liable for the conduct of another person. See comment following § 562.041, V.A.M.S.

THE COURT: Mr. Justus, will you state to the Court the facts as you understand them to be....

MR. JUSTUS: ... [T]he evidence ... in this case that on the 2nd day of February, 1983, that this defendant and ... James Cooley ... kidnapped the victim ... from a mall in Springfield, ... Missouri.... [A]t that point they brought him down to Taney County by the use of force and against his will.... [W]hile they were in Taney County and during the course of the kidnapping Rex Lee Smith received a stab wound to the heart....

It appeared ... [from autopsy doctor testimony at preliminary] that he died just approximately ten minutes after he received the stab wound. He was found on the banks of Swan Creek....

[T]he kidnapping took place that evening. The death occurred that same night. Although it started up there, it ended down here....

\*    \*    \*    \*    \*    \*

THE COURT: Mr. Lyons, do you have any quarrel with the statement of facts that Mr. Justus gave to the Court or any comments upon those facts?

MR. LYONS: No, your Honor.

\*    \*    \*    \*    \*    \*

THE COURT: Mr. Ward, you heard what Mr. Justus stated to the Court that happened out there from Springfield on down to Swan Creek in Taney County?

MR. WARD: Yes.

THE COURT: Did he pretty accurately state the facts?

MR. WARD: Yes.

THE COURT: Do you have any quarrel with the statement of facts?

MR. WARD: No.

\*    \*    \*    \*    \*    \*

THE COURT: Do you have anything that you would like to add to it or take away from the statement of facts?

MR. WARD: No.

**4.** Section 565.003, RSMo 1978, reads: "Any person who unlawfully kills another human being without a premeditated intent to cause the death of a particular individual is guilty of the offense

The court carefully inquired about the written plea of guilty signed by movant. Movant, by his sworn testimony, said he had no questions or confusion about the meaning of the questions in the written plea of guilty; he had no lack of understanding about the written plea of guilty. In the sworn written plea of guilty movant stated:

I assisted Jim Cooley in taking Rex ... from Springfield, Missouri against his will and by physical force and bringing him to Taney County where he was stabbed and killed.

The charge of first degree felony murder in the amended information did not require premeditated intent on the part of the movant to cause the death of the victim if the killing was committed in the perpetration of a kidnapping.[4]

To be convicted of first degree felony murder under § 565.003, a person need only have the requisite intent to commit or participate in the underlying felony and "no other mental state on his part need be demonstrated because of the strict liability imposed by the felony rule." (Citation omitted.) *State v. Rumble*, 680 S.W.2d 939, 943 (Mo. banc 1984). "[I]t is the intent to commit the underlying felony, not the intent to commit the killing, which is the gravamen of the offense [first degree felony murder]." *State v. Lassen*, 679 S.W.2d 363, 369 (Mo.App.1984).

■ There was a plethora of evidence before the motion court of movant's active participation in the kidnapping. Much of the evidence was supplied by movant's testimony or sworn statements at the time of the guilty plea. The law did not require proof of movant's intent to kill to sustain a conviction for felony murder. *State v. Rumble, supra.* Accordingly, there was substantial evidence before the motion court that the advice given to movant by his counsel concerning felony murder was correct advice.

of first degree murder if the killing was committed in the perpetration of or in the attempt to perpetrate arson, rape, robbery, burglary, or kidnapping."

[A]ppellate review of the trial court's decision in ruling a Rule 27.26 proceeding is expressly "limited to a determination of whether the findings, conclusions, and judgment of the trial court are *clearly erroneous.*" ... Such findings and conclusions are deemed clearly erroneous only if, after a review of the entire record, the appellate court is left with the "definite and firm impression that a mistake has been made." (Citation omitted.)

*Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987) (emphasis in original). Movant's testimony that he did not know Cooley was going to kidnap the victim was refuted by the transcript of the guilty plea hearing, the written plea of guilty at that time, and by other testimony of movant. The motion court was free to believe or disbelieve movant's testimony, even if it had been undisputed. *Sanders v. State, supra,* 738 S.W.2d at 857. The findings of the motion court included the following:

> Movant has failed to prove by a preponderance of the evidence that defense attorney ... failed to properly inform Movant of the proper elements of the crime of First Degree Murder, and that Movant was adequately told of the elements of First Degree Murder and his culpability....
>
> Therefore, the Court concludes that Movants [sic] plea was knowingly and intelligently taken and he had been properly advised by counsel and the Court.

Movant has failed to show that the motion court clearly erred in reaching the above conclusion. *McKinzie v. State of Missouri,* 790 S.W.2d 263 (Mo.App.1990). Movant's first point has no merit and is rejected.

Movant's third point is that the original trial court lacked jurisdiction over the amended first degree murder charge when movant had originally been charged with capital murder. He bases that argument on the fact that the amended information did not state what sub-paragraph of the kidnapping statute was violated. This is said to be a failure to allege an essential element of the charge, making the information defective, and thereby failing to confer sufficient jurisdiction on the trial court to accept a plea of guilty.

On this point, the motion court ruled that the trial court had jurisdiction to take the guilty plea because the amended information does meet the prerequisites and contained the proper wording to charge the offense of first degree murder. The motion court noted that the amended information[5] did not follow the appropriate MACH–CR 16.08(b) form, but it was substantially consistent with the pattern charge and gave movant fair notice of the crime with which he was convicted, citing *State v. Reese,* 687 S.W.2d 635 (Mo.App. 1985).

Movant is correct that the sufficiency of an information is jurisdictional and may be raised collaterally; however, such recourse is available only when the information "is so obviously defective that by no reasonable construction can it be said to charge the offense for which movant was convicted." *Wilson v. State,* 755 S.W.2d 324, 325 (Mo.App.1988); *Blackmon v. State,* 639 S.W.2d 127–28[1, 2] (Mo.App. 1982). The case cited by the trial court, *State v. Reese,* has been frequently cited with approval and is dispositive of the issues raised by movant in point three. In *State v. Reese, supra,* at 636, the information under which defendant was convicted read: "[T]he defendant, John Reese, in violation of Section 565.003, committed the felony of First Degree Murder ... in that the Defendant caused the death of Teresa A. Reese by Shooting her, and that the Defendant did so in committing a Burglary at the Teresa A. Reese trailer house...." This court in *State v. Reese* noted that the pattern charge MACH–CR 16.06(b) did call for the information to set forth all elements of the underlying crime and that the amended information did not conform to that standard. In rejecting the defendant's claim in *State v. Reese,* this court said at 638:

**5.** See footnote 2.

A general allegation, similar to the one in question, is found in the current approved charge for felony murder, MACH–CR 13.06....

The gist of the offense was murder. The amended information gave the defendant fair notice of the crime of which he was convicted.

Since the information here uses the statutory language and is substantially consistent with the forms that have been approved by the Supreme Court, the information was not insufficient as a matter of law. *State v. Stark,* 728 S.W.2d 301, 303 (Mo.App.1987). Careful reading of the transcript of the plea in this case convinces this court that the movant here was given fair notice of the crime to which he pled guilty; namely, felony murder. The motion court did not commit error in its ruling. Movant's third point has no merit.

■ In movant's second point he claims, for the first time shown anywhere in the record, ineffective trial counsel because of failure to pursue discovery and investigate the case. In the latter part of movant's first point his argument strays far afield from the point initially raised in that the argument is made that movant was a novice to the criminal justice system, did not have the capacity to make a knowing decision, and when he entered the courtroom he was in a "haze," merely going through the motions as laid out for him. The Rule 27.26 motion was amended but the claims of ineffective counsel raised in point two and the claims of movant's incapacity to make a knowing decision were not included in the motions. Therefore, those contentions were not preserved for appellate review. *Williams–Bey v. State,* 789 S.W.2d 99, 100 (Mo.App.1990). An issue not raised by a Rule 27.26 motion and not presented to the motion court for determination will not be considered for the first time on appeal. *Williams–Bey v. State, supra,* at 101; *Moton v. State,* 772 S.W.2d 689, 692 (Mo.App.1989); *Malady v. State,* 762 S.W.2d 442, 444 (Mo.App.1988). Also, *see Grubbs v. State,* 760 S.W.2d 115, 121 (Mo.

banc 1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2111, 104 L.Ed.2d 672 (1989).

The judgment is affirmed.

FLANIGAN, P.J., and MAUS, J., concur.